1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01921-MDB

DR. ANUJ PEDDADA

     Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO D/B/A CENTURA HEALTH-PENROSE-ST.
FRANCIS HEALTH SERVICES; and,
COMMONSPIRIT HEALTH FOUNDATION D/B/A COMMONSPIRIT HEALTH

     Defendants.

---

## SCHEDULING ORDER

---

## 1. DATE OF
## CONFERENCE
## AND APPEARANCES OF COUNSEL AND PRO SE
## PARTIES

The Parties did not need a F.R.C.P. 16 Scheduling Conference given the lack of disputes over this scheduling order.

## 2. STATEMENT OF
## JURISDICTION

Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. This Action is authorized and instituted pursuant to 42 U.S.C. §§ 2000e-5(f) through (k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 12117(a) of the Americans with Disabilities Act which incorporates Title VII's enforcement provisions, 29 U.S.C. §794a of the

2

Rehabilitation Act of 1973 which incorporates Title VII's enforcement provisions, and pursuant to 42 U.S.C. § 1981a.

Jurisdiction over Plaintiff's state law claim is proper under 28 U.S.C. § 1367(a) because it is so related to Plaintiff's claims arising under federal law that it forms part of the same case or controversy.

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). The events and omissions alleged herein occurred within the State of Colorado. At the time of the events and omissions giving rise to this litigation, all the parties resided or conducted business in Colorado.

### 3. STATEMENT OF CLAIMS AND DEFENSES

a. **Plaintiff:** Since 1999, Dr. Anuj Peddada provided services as a board-certified radiation oncologist with Catholic Health Initiatives Colorado ("Centura"), providing cancer treatment at Centura's Penrose Cancer Center ("Penrose"). Dr. Peddada saved countless lives in his decades with Centura, pioneering cutting edge cancer treatment programs at Penrose. But, in April of 2022, just after Centura convinced Dr. Peddada to shutter his private practice and come in-house, Dr. Peddada disclosed that he was suffering from physiological and psychological symptoms corresponding with physician burnout. Mere days after requesting medical leave and supplying medical documentation, Centura suddenly retracted its employment offer – including the employment contract which Dr. Peddada had already signed – and refused to hire/terminated Dr. Peddada, leaving his patients afloat, and devastating his career.

Centura will be succeeded by Defendant CommonSpirit Health, which at all relevant times was merged with Adventist Health System to form Centura, but a split between the entities

has been announced and is imminent. It will continue to own and manage Penrose thereafter. This is a lawsuit brought under the Americans with Disabilities Act, the Rehabilitation Act of 1973, and state laws prohibiting wrongful discharge in violation of public policy, unjust enrichment, and civil conspiracy, to vindicate Dr. Peddada's rights and ensure that doctors are treated with the same care and compassion they treat their patients.

b.  Defendants:

First, Common Spirit is not a proper party.  Catholic Health Initiatives Colorado (CHIC) is the proper party. Common Spirit is the sole member of CHIC, but that fact does not make it a proper party, because it took no action relevant to this case. Centura was a "subsidiary" of CHIC and Adventist Health that jointly managed their facilities, but, as of August 1, 2023, Centura and the joint management are now gone. However, that is what existed at the time of the relevant events. The facilities are now directly managed by their owners, which in the case of Penrose is CHIC.  Centura has not been succeeded by CommonSpirit Health.  Common Spirit Health was never merged with Adventist Health System to form Centura. Common Spirit Health  never has and will not own and manage Penrose hereafter.

Peddada owned a practice group, Radiation Oncology PC ("ROPC") with his partner, Dr. Alan Monroe.  Although Peddada provided excellent medical care and was financially productive, he was rude and abusive to staff. Peddada refused to speak to his partner, Dr. Monroe, for months, and none of the ROPC doctors wanted to keep practicing together. To help resolve ROPC's relationship issues, Penrose suggested the hiring of Peddada and Monroe as employees

4

at different locations. In the highly regulated field of healthcare and physician contracting, a legally required aspect of those employment agreements was a ROPC loan repayment/forgiveness provision that had been discussed with both doctors, which was accepted by Monroe but resisted by Peddada. While awaiting legal advice on the structure and wording of that provision, Penrose distributed a discussion draft of the standard physician employment agreement. Since credentialing of new employed physicians with payors takes time, there was dire urgency to getting an agreement in place. Without realizing that the repayment/forgiveness provision was missing, Eric Koval allowed Peddada to sign the discussion draft which was incomplete and illegal without it. When Koval realized that it was not the intended agreement, he immediately informed Peddada that Penrose would not sign it and that a new agreement which included the required provision would be circulated. In mid-April 2020, Peddada informed ROPC (with a copy to Penrose) that he was taking a three month medical leave from ROPC. After that request was made and the 3 month leave was started, Penrose approved Peddada's medical leave and offered Peddada employment by sending him the complete employment agreement to sign. Peddada did not sign the employment agreement and refused to communicate with Penrose about it, claiming that he did not have to talk with Penrose about the agreement because he was on medical leave. Meanwhile, Peddada put his house on the market.  Penrose executives felt that Peddada was trying to avoid both the repayment obligation and a  commitment to Penrose. Given that Peddada had refused to talk to his partner for months and was now adamantly refusing to talk to Penrose about his employment agreement for the next  several months despite the urgency of the situation, Penrose was left hanging in an untenable situation. So after waiting for Peddada to reconsider and respond for two weeks, Penrose had no choice but to withdraw the offer of employment and move forward with a new applicant. Penrose fully accommodated Peddada's

request for leave and only withdrew the offer as a result of Peddada's inexplicable, bizarre refusal to communicate and his patterns that destroyed hope for a productive working relationship.

c.  Other Parties: N/A

## 4.  UNDISPUTED
FACTS

The following facts are undisputed:

1.      Dr. Anuj Peddada was a board-certified radiation oncologist.

2.      Dr. Peddada owned a practice group, Radiation Oncology PC ("ROPC").

3.      The relationship was reflected in a Professional Services Agreement effective January 1, 2016, by and between Dr. Peddada and ROPC.

4.      ROPC brought on another doctor, Dr. Alan Monroe, who was made an equal partner.

5.      ROPC contracted exclusively to provide services to Centura at Penrose Cancer Center, in Colorado Springs.

6.      The most recent agreement between Centura at Penrose Cancer Center and ROPC was reflected in an Exclusive Professional Services Agreement for Radiation Oncology Services effective June 19, 2017.

7.      In 2020, Centura discussed with ROPC that, in addition to ROPC's services to Penrose, Centura wanted ROPC to provide coverage to St. Francis Medical Center ("St. Francis") beginning July of 2021.

8.      In December 2021, Centura provided contractually required notice that it would not renew the exclusive contract for ROPC to perform medical services at Penrose and St. Francis once the contract expired on June 1, 2022.

6

9.      On or around March 3, 2022, Dr. Peddada met with Drs. Dennis Kraus and Jeffrey Albert, Centura's Chief of Oncology and Chief of Radiation Oncology respectively, regarding his potential future employment.

10.      Shortly after the meeting, Dr. Peddada applied for the Penrose position.

## 5.  COMPUTATION OF DAMAGES

Plaintiff claims actual economic losses (including consequential damages), compensatory damages, including, but not limited to, those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Specifically, with respect to his back and front pay, Plaintiff seeks no less than $10 million in damages according to pre-litigation expert analysis provided to Defendants. Plaintiff reserves the right to increase, revise, or supplement such calculations upon further discovery and in accordance with expert deadlines set in this case, up to and all the way through trial.

With respect to the state claims, Plaintiff seeks the statutory cap for noneconomic damages ($642,180) and intends to request an increase to the maximum $1,284,370 with clear and convincing evidence to support it. Plaintiff intends to seek exemplary damages pursuant to C.R.S. § 13-21-102 (allowing for double and triple damages), in an amount to be determined by a jury or the court as may be appropriate, but which may reach as high as $22 million and $33 million respectively.

With respect to compensatory emotional distress and punitive damages under federal law, Plaintiff will seek the full amount as allowed for by law. Generally, compensatory damages such as those for emotional distress are "personal and difficult to quantify and because compensatory

7

damages for emotional distress are typically considered a fact issue for the jury, emotional distress damages are not subject to the kind of calculation contemplated by Rule 26(a)(1)(A)(iii)." *Anderson v. UPS, Inc.*, 09-2526-KHV-DJW, 2010 WL 4822564, *10 & n.33 (D. Kan. Nov. 22, 2010); *Beard v. Flying J., Inc.*, 116 F. Supp. 2d 1077, 1095 (S.D. Iowa 2000). Similarly, "[p]unitive damages, if merited, are to be determined by the fact finder and are up to the discretion of the trier of fact." *Burrell v. Crown Cent. Petroleum*, 177 F.R.D. 376, 386-87 (E.D. Tex). Such damages are capped, however, for his Americans with Disabilities Act claims. Given the size of the employer, the maximum statutory caps apply, and thus Plaintiff is seeking $300,000 in emotional distress and punitive damages for his ADA claims.

Plaintiff seeks a tax-offset where appropriate. For the vast majority of Americans, a lump-sum payment of damages will temporarily push them into a higher tax bracket in the year that the award is collected. Plaintiff intends to request a tax-offset to restore them to their rightful economic status. A tax offset serves to make Plaintiff whole for the loss of access to money that would have been available but for the Defendant's unlawful conduct. The amount of relief required to make a party whole varies from case to case depending on the individual's tax liability and the size of the award. Generally, the tax offset is calculated by comparing the marginal tax rate for tax-filers of a similar profile (*e.g.*, married, unmarried, family), as found in the IRS Revenue Procedures, and then calculating the percent of additional award needed to offset the bracket creep and higher tax penalty that arises as a result of the one-time lump payment. *See EEOC v. Beverage Dist. Co.*, LLC, Civ. No. 11-cv-02557, 2013 WL 6458735, *7-8 (D. Colo. Dec. 9, 2013), *aff'd in relevant part at* 780 F. 3d 1018, 1023-24 (10th Cir. 2015).

Plaintiff seeks pre- and post-judgment interest at the Colorado Statutory Rate of 8%.

Plaintiff seeks equitable relief, including front pay, declaratory relief and injunctive relief,

as appropriate. Plaintiff seeks her attorneys' fees and costs.

Defendants: No counterclaims for damages are currently anticipated. However, Defendant reserves the right to supplement.

## 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.  Date of Rule 26(f) meeting: September 6, 2023.

b.  Names of each participant and party he/she represented: Iris Halpern for Plaintiff Dr. Anuj Peddada. Mark Sabey for Defendant Centura and Common Spirit.

c.  Statement as to when Rule 26(a)(1) disclosures were made or will be made: October 11, 2023.

d.  Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1): Defendants have asked for a month extension of time to respond to Plaintiff's Complaint. Given the length of the Complaint and the size of the lawsuit in general, the Parties agreed that additional time would benefit the exchange of substantive disclosures.

e.  Statement concerning any agreements to conduct informal discovery:

No further agreements have been reached; however, the Parties have already exchanged significant information. Plaintiff provided two preliminary expert reports on damages, and sat for a voluntary three hour pre-litigation deposition. No further informal discovery is anticipated at this time.

f.  Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

The Parties agree to use of a unified exhibit numbering system.

During the duration of discovery, the Parties agree to share copied of F.R.C.P. 45 subpoenas with the other side two days before they are served on any third-party witness and make themselves available for conferral during that time period if any dispute about the subpoena is to arise. If the Parties fail to resolve the dispute, they will follow the Court's informal dispute resolution procedures in order to avoid motions to quash and for stays of discovery, etc.

The Parties agree to share all contents produced in response to F.R.C.P. 45 subpoenas with the other side within seven (7) days of receiving such materials.

     g.     Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The Parties believe there will be significant electronically stored information in this case. The Parties agree to negotiate and submit to the Court a suitable protocol for the search and production of electronically stored information to facilitate the collaborative and efficient sharing of such materials. The Parties have already circulated prior protocols they have used in the past. The Parties agree to submit to the Court a protocol no later than October 31, 2023. If a dispute should arise during the negotiation of a protocol, the Parties will follow the Court's informal dispute resolution procedures.

     h.     Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The Parties have discussed the possibility of settlement, and a prompt settlement is not likely. The Parties will reassess throughout discovery and continue to discuss the subject of

potential resolution.

**7.**
**CONSENT**

All parties    ☐  [have]    **[X]  [have not]** consented to the exercise of jurisdiction of a magistrate judge.

**8.  DISCOVERY**
**LIMITATIONS**

a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

The Parties agree to the presumptive limits. The presumptive limit on depositions also does not include depositions of expert witnesses and pertains only to fact witnesses.

b.      Limitations which any party proposes on the length of depositions.

The Parties agree to the presumptive length of depositions, with the objective that all depositions be completed on the day they are noticed, absent mutual consent otherwise.

c.      Limitations which any party proposes on the number of requests for production and/or requests for admission.

The Parties agree to the presumptive limits, with the clarification that depositions and interrogatories should be counted per side and not per party.

d.      Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:

Fifty-five days before the close of discovery, which would be October 1, 2024.

e.      Other Planning or Discovery Orders

11

The Parties intend to jointly submit a Protective Order for the Court to enter which will govern the privacy of certain information and documents exchanged during litigation.

## 9.  CASE PLAN AND SCHEDULE

a.     Deadline for Joinder of Parties and Amendment of Pleadings: October 31, 2023.

b.     Discovery Cut-off: November 15, 2024.

c.     Dispositive Motion Deadline: Dispositive motions due January 31, 2025.

d.     Expert Witness Disclosure

1.     The parties shall identify anticipated fields of expert testimony, if any.

Plaintiff: Experts on damages. Experts on Physician "burn-out" and related medical conditions, including underlying cause, symptoms, and impacts on individual suffering from same, including in the medical field.

Defendants: In addition to any needed rebuttal experts, Defendant may call experts in the field of physician contracting, compliance, credentialling and medical staff matters.

2.     Limitations which the parties propose on the use or number of expert witnesses. The Parties agree to three (3) experts per side.

3.      The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before July 1, 2024.

4.      The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before August 30, 2024.

e.      Identification of Persons to Be Deposed:

Plaintiff:

1. Alan Monroe
2. Dennis Kraus
3. Jeffrey Albert
4. Eric Koval
5. William Plauth
6. Caryn Baldauf
7. Diane Thompson
8. Samuel Weller
9. Jason Tacha
10. F.R.C.P. 30(b)(6) Deponent

Defendants:

1. Anuj Peddada
2. Peddada's wife
3. Defendant reserves the right to identify other deponents as the case progresses.

## 10.  DATES FOR FURTHER CONFERENCES

a. Status conferences will be held in this case at the following dates and times:

_____.

b. A final pretrial conference will be held in this case on _____ at o'clock _____ m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11.  OTHER SCHEDULING MATTERS

13

a.  Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement. None.

b.  Anticipated length of trial and whether trial is to the court or jury. Seven (7) day jury trial.

c.  Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.

None.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 20 day of September 2023.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

/s/ Iris Halpern                                    Melvin B. Sabey
Iris Halpern                                        Melvin B. Sabey
Rathod | Mohamedbhai LLC                            Hall, Render, Killian, Heath & Lyman PC
2701 Lawrence St.                                   999 17th Street, Suite 800
Denver, CO 80205                                    Denver, CO 80202
Phone: (303) 578-4400                               Phone: (303) 801-3535
Email: ih@rmlawyers.com                             Email: melsabey@hallrender.com
Attorney for Plaintiff                              Attorney for Defendants