IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-01921-NYW-MDB

DR. ANUJ PEDDADA,

    Plaintiff/Counter-Defendant,

v.

CATHOLIC HEALTH INITIATIVES COLORADO, and
COMMON SPIRIT HEALTH,

    Defendants/Counterclaimants.

---

### ORDER ON MOTION TO DISMISS COUNTERCLAIM

---

This matter is before the Court on Plaintiff's Motion to Dismiss Defendants' Counterclaim ("Motion to Dismiss"). [Doc. 117, filed December 6, 2024]. Plaintiff Dr. Anuj Peddada ("Plaintiff" or "Dr. Peddada") seeks to dismiss Defendant Catholic Health Initiatives Colorado d/b/a Centura Health-Penrose-St. Francis ("Penrose") and Defendant Common Spirit Health's ("Common Spirit," and collectively with Penrose, "Defendants") Counterclaim asserted in Defendants' Answer to Amended Complaint and Counterclaim ("Answer and Counterclaim" or "Counterclaim"). [Doc. 113, filed November 15, 2024]. Plaintiff brings the Motion pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. 117 at 1]. For the reasons discussed herein, the Motion to Dismiss is respectfully **DENIED**.

### BACKGROUND

**I.    Factual Background**

The Court draws the following allegations from Dr. Peddada's First Amended Complaint and Jury Demand ("First Amended Complaint"), [Doc. 104, filed October 31,

1

2024], and Defendants' Answer and Counterclaim, [Doc. 113], and the allegations are taken as true for the purposes of this Order. *Mrs. Colorado-Am., Inc. v. Mrs. Colorado U.S. Pageant*, No. 05-cv-02660-MSK-MEH, 2007 WL 496690, at *1 (D. Colo. Feb. 13, 2007) (citing *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001)) ("In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint—or, in the case, the Counterclaims—as true and view those allegations in the light most favorable to the nonmoving party."). Dr. Peddada is a board-certified radiation oncologist who operated a private practice at Penrose called Radiation Oncology PC ("ROPC"). [Doc. 104 at ¶¶ 16, 22, 24]. ROPC contracted with Penrose to provide services at Penrose. [*Id.* at ¶ 25]. In 2020, Penrose announced that it wanted ROPC to provide coverage to another medical center, St. Francis Medical Center, starting in July 2021. [*Id.* at ¶ 65]. To provide the same standard of care at an additional hospital, ROPC needed to hire an additional physician, so Penrose provided ROPC with a Recruitment Assistance Agreement ("the Recruitment Agreement") regarding a loan Penrose would provide to ROPC to support hiring a new physician. [*Id.* at ¶ 66; Doc. 113 at 19 ¶ 3]. The Recruitment Agreement articulated the terms of Dr. Peddada's loan repayment obligation and was fully executed January 12, 2021. [Doc. 104 at ¶ 67; Doc 113 at 19 ¶ 4]. Eventually, the physician that ROPC recruited left the practice and ROPC stopped functioning as a partnership in 2022. [Doc. 104 at ¶ 74; Doc. 113 at 19 ¶¶ 5–6]. This departure triggered a loan repayment obligation for the partners of ROPC, including Dr. Peddada. [Doc. 113 at 19 ¶ 6].

On April 5, 2022, Penrose extended an offer of employment to Dr. Peddada to move in-house at Penrose (the "first offer"), and Dr. Peddada accepted the offer on April

12, 2022. [Doc. 104 at ¶¶ 83–84]. Shortly thereafter, Dr. Peddada requested "several months" of medical leave and disclosed to Penrose that he was suffering from physiological and psychological symptoms of physician burnout. [*Id.* at ¶¶ 90–92]. On April 26, 2022, Penrose emailed Dr. Peddada a new employment agreement (the "second offer") that stated that the first offer was void. [*Id.* at ¶¶ 109–10]. For reasons related to his condition and a pre-scheduled vacation, and because he had already signed an employment agreement, Dr. Peddada did not respond to the second offer or associated emails. [*Id.* at ¶¶ 111–14]. On May 10, 2022, Penrose emailed Dr. Peddada stating that he had "declined employment" by failing to sign the second offer and stating that Penrose would not be extending a "revised offer of employment." [*Id.* at ¶¶ 125–26]. In the same email, Penrose asserted that the first offer was "contingent upon Dr. Peddada agreeing to enter into an agreement to pay back the recruitment assistance" associated with the Recruitment Agreement. [*Id.* at ¶ 130].

As is pertinent to Defendants' Counterclaim, Dr. Peddada alleges that Penrose would forgive the loan obligations under the Recruitment Agreement if Dr. Peddada continued to work for Penrose, and that if not, Dr. Peddada had agreed to pay back any loan obligations over a thirty-six-month term, beginning July 1, 2022, one year after he was to begin employment with Penrose. [*Id.* at ¶¶ 133–43]. Defendants allege that Dr. Peddada has only made one payment and has not repaid the principal or interest on the loan obligation. [Doc. 113 at 20 ¶ 10]. Dr. Peddada alleges that he has paid back the entire principal amount of the loan. [Doc. 104 at ¶ 156]. On May 13, 2022, Penrose asked Dr. Peddada to sign a settlement agreement, including a promissory note, and Dr. Peddada notified Penrose that he would not sign the settlement agreement because

3

Penrose "revoked [his] offer of employment in retaliation for [his] request for a short leave of absence," and that he was "considering [his] legal options for this unlawful discrimination and retaliation." [*Id.* at ¶ 147]. This lawsuit followed.

Dr. Peddada asserts several claims for relief against Defendants, including six claims under the Americans with Disabilities Act, [*id.* at ¶¶ 159–90]; a claim under the Rehabilitation Act of 1973, [*id.* at ¶¶ 191–97]; and Colorado state law claims for wrongful discharge in violation of public policy, unjust enrichment, and civil conspiracy, [*id.* at ¶¶ 198–226]. At this point, discovery disputes between the Parties remain, which the Parties continue to litigate before the Honorable Maritza Dominguez Braswell. *See* [Doc. 124; Doc. 145; Doc. 151; Doc. 157; Doc. 174].

## II.     Procedural Background

Dr. Peddada commenced this case on July 27, 2023 against Catholic Health Initiatives Colorado d/b/a Centura Health-Penrose-St. Francis Health Services and CommonSpirit Health Foundation d/b/a Common Spirt Health. *See* [Doc. 1]. On September 21, 2023, Defendants filed a Motion to Dismiss Wrongful Discharge Claim ("Defendants' Motion to Dismiss"). [Doc. 21]. While the Motion to Dismiss was pending, the Court entered the Scheduling Order in the case on October 4, 2023. [Doc. 25]. In the Scheduling Order, Defendants stated "[n]o counterclaims for damages are currently anticipated. However, Defendant reserves the right to supplement." [*Id.* at 3, 8]. The discovery deadline was set for November 15, 2024, [*id.* at 10], but ultimately extended to January 10, 2025 for the completion of written and electronically stored information discovery, [Doc. 122].

On March 20, 2024, Judge Dominguez Braswell denied Defendants' Motion to

4

Dismiss without prejudice.  [Doc. 46].  Under Rule 12(a)(4), "if the court denies [a] motion [under Rule 12] . . . the responsive pleading must be served within 14 days after notice of the court's action."  Fed. R. Civ. P. 12(a)(4).  On April 3, 2024, the Parties jointly filed[1] Defendants' Unopposed Motion for Extension of Time to Answer Plaintiff's Complaint ("Motion for Extension of Time"), informing the Court that the "[P]arties have been conferring about potential amendment to Plaintiff's Complaint" and asking the Court to extend Defendants' deadline to answer until 14 days after the Court resolved a forthcoming motion to amend by Plaintiff that the Defendants anticipated they would "oppose at least [in] some aspects."  [Doc. 47 at 1].  On April 4, 2024, the Honorable S. Kato Crews granted Defendants' Motion for Extension of Time, stating that "Defendants shall answer or otherwise respond to the [A]mended [C]omplaint 14 days after the [A]mended [C]omplaint is accepted for filing by the Court."  [Doc. 48].

On April 9, 2024, Plaintiff filed the Plaintiff's Motion for Leave to File First Amended Complaint ("Motion to Amend"), and a proposed First Amended Complaint, [Doc. 50; Doc. 50-2].  After full briefing on the merits, the Court granted Plaintiff's Motion to Amend on October 31, 2024.  [Doc. 102].  The Court ordered Defendants to respond to the forthcoming Amended Complaint by November 15, 2024.  [*Id.* at 12].  Dr. Peddada filed his Amended Complaint on October 31, 2024, which identified essentially the same Defendants.  [Doc. 104].  Defendants filed their Answer and Counterclaim on November 15, 2024.  [Doc. 113].

In the single Counterclaim, Defendants bring a claim for unjust enrichment based

---

[1] Although titled "Defendants' Unopposed Motion for Extension of Time to Answer Plaintiff's Complaint," the motion reflects the electronic signatures of both Plaintiff's and Defendants' counsel.  [Doc. 47 at 2].

5

on Dr. Peddada's alleged failure to pay Penrose for a loan obligation he incurred as a partner of ROPC. [Doc. 113 at 19]. Defendants allege that Dr. Peddada "strenuously resisted and was in default on the repayment obligation" and "did not repay the full principal or the interest that was due and owing." [*Id.* at 20 ¶¶ 9–10]. As a result, Defendants allege that Plaintiff "is in violation of his share of the repayment obligation and will be unjustly enriched if he is not required to make payment to Penrose." [*Id.* at ¶ 13]. Furthermore, Defendants allege that the promissory note to the Recruitment Agreement contains an attorney's fees provision which covers the time Penrose has spent collecting on the note, and thus Dr. Peddada must "reimburse Penrose for the associated attorneys' fees." [*Id.* at ¶ 14].

On December 6, 2024, Plaintiff filed the instant Motion to Dismiss, seeking dismissal of the Counterclaim. [Doc. 117]. Defendants filed their Response to Plaintiff's Motion to Dismiss Defendants' Counterclaim on December 27, 2024. [Doc. 123]. Dr. Peddada did not file a Reply, and the time to do so has elapsed. Thus, the Motion to Dismiss is ripe for review.

## LEGAL STANDARDS

Federal Rule of Civil Procedure Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, plaintiffs may not rely on labels, conclusions, or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*

6

*v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible").  The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

A "Rule 12(b)(6) motion to dismiss a counterclaim is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss a claim."  *Peiker acustic, Inc. v. Patrick Kennedy*, No. 10-cv-02083-ZLW-MJW, 2010 WL 4977870, at *1 (D. Colo. Dec. 2, 2010).  "[T]he timeliness of a claim is, in essence, an element of the substantive claim, and is challenged by means of Fed. R. Civ. P. 12(b)(6)."  *Schimmer v. State Farm Mut. Auto. Ins. Co.*, No. 05-cv-02513-MSK, 2006 WL 1658550, at *2 (D. Colo. Jun. 8, 2006).  Therefore, a Rule 12(b)(6) motion is a proper basis through which to seek dismissal of a counterclaim based on timeliness.

## ANALYSIS

Dr. Peddada asks the Court to dismiss Defendants' Counterclaim on two alternative grounds, both of which rely on the presumption that the Counterclaim is compulsory:  (1) the Counterclaim is untimely under Rule 13(a)[2] and thus should be dismissed under Rule 12(b)(6); or, in the alternative, (2) the Counterclaim must have been

---

[2] Both Parties treat the Counterclaim as compulsory.  *See* [Doc. 117 at 5; Doc. 123 at 1].

7

brought within one year of the original Complaint and is thus time-barred under Colorado Revised Statutes § 13-80-109.  [Doc. 117 at 1, 5, 7].  In both circumstances, Plaintiff argues that allowing Defendants' Counterclaim is prejudicial toward him.  [*Id.* at 1–2].

I.  **Timeliness of Counterclaim Under Rule 13(a)**

Dr. Peddada asserts that Defendants' Counterclaim is untimely because it was "filed sixteen months following the filing of Plaintiff's original Complaint and essentially after the close of discovery."  [*Id.* at 4].  Specifically, Dr. Peddada argues that Defendants should have filed their Counterclaim within 14 days of Judge Dominguez Braswell's March 20, 2024 order denying Defendants' Motion to Dismiss.  [*Id.* at 6]; *see* [Doc. 46].  In response, Defendants assert that they followed the April 4, 2024 and October 31, 2024 orders requiring Defendants to file an answer or otherwise respond to Plaintiff's Amended Complaint within 14 days after its filing by submitting their Answer and Counterclaim on November 15, 2024.  [Doc. 123 at 2]; *see* [Doc. 48; Doc. 102].  Therefore, Defendants argue, their Counterclaim is timely under Rule 13(a).  [Doc. 123 at 2].

Plaintiff asserts that "Rule 13(a) requires compulsory counterclaims to be brought in a timely manner," citing non-binding case law.  [Doc. 117 at 5–6].  While not necessarily incorrect as a legal principle, the United States Court of Appeals for the Tenth Circuit ("the Tenth Circuit") and Rule 13(a) make clear that a party must assert a compulsory counterclaim in the first responsive pleading.  *Reynolds v. Quarter Circle M Ranch, Inc.*, 24 F. App'x 850, 854 (10th Cir. 2001); *Full Draw Prods. v. Easton Sports, Inc.*, 85 F. Supp. 2d 1001, 1009 (D. Colo. 2000) ("[A] party waives counterclaims that arise out of the same transaction or occurrence if they are not asserted in the first responsive pleading.").  Filing a motion to dismiss under Rule 12(b)(6) postpones the time for filing a responsive

8

pleading, such as an answer and counterclaim, until the court rules on the motion to dismiss. *Burris v. Bob Moore Auto Grp., Inc., LLC*, 517 F. App'x 639, 640 (10th Cir. 2013) ("When a complaint has been challenged by a motion to dismiss, Rule 12(a)(4)(A) supplants the filing deadlines in Rule 12(a)(1)(A), tolling the time for an answer until fourteen days after notice that the motion has been denied.").

Here, Defendants filed their Motion to Dismiss on September 21, 2023, [Doc. 21], and Judge Dominguez Braswell denied Defendants' Motion to Dismiss without prejudice on March 20, 2024, [Doc. 46]. At this point, Defendants' deadline for filing a counterclaim was April 3, 2024, 14 days after the denial of their Motion to Dismiss. Fed. R. Civ. P. 12(a)(4); *Burris*, 517 F. App'x at 640. On April 3, 2024, the Parties jointly filed the Motion for Extension of Time, asking the Court to extend Defendants' deadline to answer until 14 days after the Court resolved a forthcoming request by Plaintiff to amend his operative pleading, [Doc. 47 at ¶ 4], which Judge Crews granted, stating that "Defendants shall answer or otherwise respond to the [A]mended [C]omplaint 14 days after the [A]mended [C]omplaint is accepted for filing by the Court," [Doc. 48]. This Court granted Plaintiff's Motion to Amend on October 31, 2024, [Doc. 102], and Plaintiff filed his Amended Complaint that same day, [Doc. 104]. In the Court's October 31, 2024 order, it specifically stated that Defendants "SHALL FILE a response to Plaintiff's First Amended Complaint on or before November 15, 2024." [Doc. 102 at 12]. Defendants filed their Answer and Counterclaim on November 15, 2024, within the timeframe the Court stated in its October 31, 2024 order. [Doc. 113]. Therefore, the Counterclaim was timely.[3]

---

[3] Dr. Peddada also argues that allowing Defendants' Counterclaim after the close of discovery prejudices him because he is "precluded from engaging in discovery just weeks before the single motion for summary judgment allowed by this Court is due." [Doc. 117 at 4, 7]. Having found that the Counterclaim is timely under Rule 13(a) and Tenth Circuit

9

## II. Colorado's Counterclaim Revival Statute

Dr. Peddada argues that, in the alternative, if state law applies, Defendants' Counterclaim is time-barred under Colorado Revised Statutes § 13-80-109, Colorado's Counterclaim Revival Statute ("the Revival Statute"). [Doc. 117 at 8]. The Revival Statute provides that:

> Except for causes of action arising out of the transaction or occurrence which is the subject matter of the opposing party's claim, the limitation provisions of this article shall apply to the case of any debt, contract, obligation, injury, or liability alleged by a defending party as a counterclaim or setoff. A counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter.

Colo. Rev. Stat. § 13-80-109. In other words, the Revival Statute provides that a party may file a compulsory counterclaim that is otherwise time-barred by the statute of limitations, but the party must do so within one year of the filing of the complaint. *Makeen v. Hailey*, 381 P.3d 337, 341 (Colo. App. 2015) ("[T]his section permits otherwise time-barred claims to be filed as counterclaims, if compulsory, within one year of service of the complaint that includes the claim that gives rise to the counterclaims."). Dr. Peddada argues that Defendants' Counterclaim is a state-law claim that Defendants failed to bring within one year of Dr. Peddada's original Complaint under the Revival Statute. [Doc. 117 at 8]. Defendants' response does not address this argument. *See generally* [Doc. 123].

Courts in the Tenth Circuit have concluded that a counterclaim may be timely

---

authority, this Court need not analyze prejudice. Nevertheless, the Court observes that in the Scheduling Order, Defendants expressly reserved the right to assert a counterclaim. [*Id.* at 10]. And in light of the lack of reply, Dr. Peddada does not dispute that his counsel acknowledged on January 31, 2023 that "[Defendants] intend[] to file a counterclaim to collect on Dr. Peddada's repayment obligation" or that he investigated topics related to the loan repayment during discovery. [Doc. 123 at 3–4].

10

under Rule 13(a) but nevertheless barred by the state substantive statute of limitations. *See, e.g.*, *Hatfield v. Burlington N. R. Co.*, 747 F. Supp. 634, 641 (D. Kan. 1990) (concluding that a counterclaim was barred by the state statute of limitations despite being timely under the Federal Rules of Civil Procedure). Furthermore, Colorado courts have concluded that the one-year period relevant for the Revival Statute begins at the filing of the original complaint, not an amended or last-filed complaint. *Makeen*, 381 P.3d at 342 ("We disagree with the trial court's conclusion that the revival statute's one-year limitations period runs from the date of the last-filed complaint. . . . Under the plain language of the revival statute, the period to bring a stale counterclaim runs from the date of service of the first complaint that contains the claims giving rise to the compulsory counterclaims."). However, there is no clear, binding guidance from the Tenth Circuit or the Colorado Supreme Court regarding whether section 13-80-109 is substantive, and Plaintiff cites no case law stating as much. *See generally* [Doc. 117].

As currently framed, the Court cannot conclude that Plaintiff has clearly shown that Defendants' right to an unjust enrichment claim has been extinguished under the statute of limitations, the Revival Statute, or otherwise. Nor has either side offered a sufficiently robust argument for the Court to resolve this issue at this juncture, and this Court respectfully declines to speculate about, or craft, arguments that have not been briefed by Defendants, particularly given that Defendants have been represented by able counsel since the inception of this case. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform

11

research on behalf of litigants). The Parties may raise this issue in a forthcoming motion, if appropriate.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)  Plaintiff's Motion to Dismiss Defendants' Counterclaim [Doc. 117] is respectfully **DENIED**.

DATED:  July 28, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge