IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 23–cv–01921–NYW–MDB

DR. ANUJ PEDDADA,

    Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO d/b/a CENTURA HEALTH-PENROSE-ST. FRANCIS HEALTH SERVICES, and
COMMONSPIRIT HEALTH FOUNDATION d/b/a COMMONSPIRIT HEALTH,

    Defendants.

## ORDER

This matter is before the Court on Plaintiff's Motion for Sanctions. (["Motion"], Doc. No. 179.) Plaintiff filed a response, to which Defendants replied. (["Response"], Doc. No. 185; ["Reply"], Doc. No. 189.) After reviewing the Motion, briefing, and relevant law, the Court **GRANTS** the Motion **in part**.

### BACKGROUND

Plaintiff brings various claims for violation of the Americans with Disabilities Act and Rehabilitation Act, wrongful discharge, unjust enrichment, and civil conspiracy. (Doc. No. 104 at ¶¶ 159–226.) He filed this action on July 27, 2023. (Doc. No. 1.) Discovery has long been closed but the parties have had ongoing disputes that the Court has managed through a series of joint status reports and conferences.

The parties also filed motions for summary judgment in June and July of this year. (Doc. Nos. 164, 167.) In support of their motion for summary judgment Defendants attached, among other things, three declarations. The first is a June 23, 2025, declaration from Andrew Gaasch, the President of CommonSpirit Mountain Region. (Doc. No. 167-1.) In it, Mr. Gaasch discusses Defendants' corporate history and explains who was and was not involved in forming the agreement with, or terminating, Plaintiff. (*Id.*) The second is a June 16, 2025, declaration from Angela Skinner, the Director of the Office of Medical Affairs for the Colorado/Utah/Kansas Division of CommonSpirit Mountain Region. (Doc. No. 167-4.) She attaches and seeks to authenticate an application Plaintiff purportedly signed and submitted for employment credentialing. (*Id.*) The third is a November 21, 2024, declaration from a physician in Colorado Springs who served as Plaintiff's primary care provider "for many years." (Doc. No. 167-3.) She says the last time she spoke to Plaintiff was in April, 2022—days before his termination. (*Id.*) The physician's statements tend to contradict some of what Plaintiff says in support of his claims. (*Id.*)

Plaintiff argues all three declarations were sprung on him, with the first two (Gaasch and Skinner) never identified as witnesses in Defendants' disclosures, the second (Skinner) including an undisclosed attachment (the credentialing application), and the third (Plaintiff's treater) amounting to an improper withholding of information that was responsive to Plaintiff's Request for Production Number 4:

> All documents and communications discussing Plaintiff's medical condition or 'burnout,' complaints of derogatory references about his health status, requests for medical leave of absence or other accommodations, and any medical paperwork or diagnosis provided to Defendants by Plaintiff or his treating physicians.

2

(Doc. No. 179 at 7.) Plaintiff seeks a bevy of sanctions including, striking Defendants' pending summary judgment motion, precluding the testimony of Mr. Gaasch and Ms. Skinner altogether, precluding the introduction of the credentialing application, precluding the introduction of the treater's declaration, allowing Plaintiff to depose the treater at Defendants' expense, and ordering Defendants to pay Plaintiff's reasonable expenses, including attorney's fees, incurred in connection with these discovery violations. (*Id.* at 12.)

Defendants respond that it was Plaintiff who disclosed Mr. Gaasch by producing his LinkedIn page during discovery, and Defendants' initial disclosures list "[a]ll witnesses disclosed by other parties in this matter" and "[a]ny person named in the documents relevant to this lawsuit." (Doc. No. 185 at 5.) Defendants also argue they "could have relied on deposition excerpts" for the same information, but "it was cleaner to find an executive currently in place, following the disaffiliation of Centura, who could sign a declaration." (*Id.* at 6.)

As to Ms. Skinner, Defendants again rely on generic statements in their initial disclosures and argue that Ms. Skinner is merely authenticating documents that were only recently discovered and immediately disclosed after they were discovered. (*Id.* at 3.) Defendants argue the failure to discover the documents earlier was due to internal restructuring and Plaintiff's failure to be forthcoming during discovery. (*Id.* at 3-5.)

Finally, with respect to the declaration of Plaintiff's treater, Defendants rely on a handful of cases to argue it is work product and not discoverable. (*Id.* at 10-11 (citing *Hickman v Taylor*, 329 U.S. 495 (1947), *Abell v. Babbitt*, 1999 WL 215403 (10th Cir. 1999), *Enos-Martinez v. Board of County Com'rs of the County of Mesa*, 2012 WL 1079442 (D. Colo. 2012)).)

**LEGAL STANDARD**

3

Rule 26(a)(1) of the Federal Rules of Civil Procedure requires that parties provide "the name, and if known, the address and telephone number of each individual likely to have discoverable information—along with the subject of that information—that the disclosing party may use to support its claims or defenses, unless the information is offered solely for impeachment." Fed. R. Civ. P. 26(a)(1)(i). Such disclosures must be supplemented through discovery when "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Pursuant to the plain language of the Rule, supplementation must occur in a timely manner. *Id.*

Mandatory disclosures serve several purposes, including giving the opposing party information about the identification and location of knowledgeable individuals to determine whether an individual should be deposed during discovery. *See Jama v. City and County of Denver*, 304 F.R.D. 289, 295 (D. Colo. 2014). A party violates Rule 26 by failing to disclose witnesses prior to the close of discovery. *See Four Corners Nephrology Assocs., P.C. v. Mercy Medical Ctr. Of Durango*, 2007 WL 1613352, at *1 (D. Colo. June 1, 2007).

Rule 37(c) provides that if a party fails to disclose information or identify witnesses as required by Rule 26(a), the party is precluded from using that witness or information "to supply evidence on a motion, at a hearing, or at trial, unless the failure to disclose is substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Moreover, if a court finds a violation of discovery rules, it must consider the appropriate sanction to be imposed and in doing so, must determine whether the Rule 26 violation is justified or harmless. *See Woodworker's Supply, Inc.*

4

*v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999). In determining whether the failure to disclose or other discovery violation was substantially justified or harmless, Courts consider the following factors: (1) the prejudice and surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. These are often referred to as the "Woodworker's Factors" *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).

The nonmoving party bears the burden of showing that it was substantially justified in failing to comply with Rule 26(a) or that such failure was harmless. *See Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004) (citation omitted). If a court determines that the violation is neither justified nor harmless, the court must choose a sanction that is both just and related to the particular violation. *See Jama*, 304 F.R.D. at 300.

**ANALYSIS**

As a threshold matter, the Court finds Defendants did not meet their disclosure obligations by including generic statements such as, "[a]ll witnesses disclosed by other parties in this matter," or "[a]ny person named in the documents relevant to this lawsuit." (Doc. No. 185 at 5.) Those statements do not provide adequate notice that Defendants intended to use any of the three witnesses in support of their defenses, nor do they identify the subject of the relevant information. As other courts have noted, "[g]iving credence to [the] assertion" that general identification is sufficient, "would require the Court to attribute an uncanny level of prescience to [the opposing party]" indeed, "knowledge of the existence of a person is distinctly different from knowledge that the person will be relied on as a fact witness." *Watts v Anthem, Inc.*, 2020

5

WL 13933266, *3 (D. Colo. Feb. 21, 2020) (quoting *Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC*, 2014 WL 2933189, at *2 (D. Colo. June 30, 2014)). Moreover, that Plaintiff produced a LinkedIn page for Mr. Gaasch, or that the physician was known to Plaintiff, is of no moment because Plaintiff's own disclosures and general knowledge do not satisfy Defendants' obligations. *See, e.g.*, *Gustafson v. Am. Fam. Mut. Ins. Co.*, 2012 WL 5904048, at *8 (D. Colo. Nov. 26, 2012) (finding the defendant's failure to disclose its intention to call the plaintiff's identified expert witness at trial violated Rule 26). Thus, the Court will move on to consider whether the failure to disclose was substantially justified or harmless.

**I.      Andrew Gaasch**

Defendants spend little-to-no time justifying this late disclosure, other than to say it was "cleaner" this way and hypocritical of Plaintiff to complain about late disclosures. (*See* Doc. No. 185 at 6.) Even if both of those things were true, they would not justify the late disclosure. Defendants could have streamlined matters through Mr. Gaasch's declaration earlier. And one party's shortcomings in litigation do not automatically justify another's. Defendants have not carried their burden on substantial justification, and the Court moves on to consider whether the failure to disclose was harmless.

The Court finds no willfulness or bad faith on Defendants' part, but the prejudice and surprise to Plaintiff is meaningful. Mr. Gaasch is an executive who offers substantive testimony about Defendants' corporate structure. (*See generally* Doc. No. 167-1.) Plaintiff has not had an opportunity to test his assertions via deposition. And while it may be possible to cure the prejudice through a late deposition, discovery in this case has been so drawn out and mired in disputes that additional discovery on these issues would surely cause significant disruption.

6

Having weighed the Woodworker's Factors, the Court finds the failure to disclose was not substantially justified or harmless. The appropriate sanction here—particularly given Defendants' proffer that the same information can be secured from other witnesses—is to strike the Gaasch declaration. (*See* Doc. No. 185 at 6 (Defendants' admission that they "could have relied on deposition excerpts" for the same information).)

## II.     Angela Skinner

Defendants say Ms. Skinner is merely an authenticating witness, and in reviewing her declaration that appears to be true. Moreover, Defendants offer several reasons why the credentialing application was not discovered sooner, including that Plaintiff gave misleading testimony. (*See generally* Doc. No. 185 at 3-5.) Although Defendants might have discovered the application sooner with greater diligence, there does not appear to be any bad faith or willfulness on their part. Moreover, the application is something Plaintiff purportedly signed and presumably knew about, making the relative surprise and prejudice minimal. The disruption is minimal as well. Unlike other declarations that may require substantive testimony from the declarants (and thus a long deposition and potentially follow-up discovery), this declaration merely purports to authenticate a document that Plaintiff himself filled out, and it is Plaintiff—not the declarant—who will provide the substantive testimony. Thus, while the late disclosure is not substantially justified, it is effectively harmless. Moreover, precluding the Skinner Declaration could make the factfinder's truth-seeking function more difficult. Thus, the Court will not strike the Skinner Declaration.

## III.     Plaintiff's Treater

Defendants secured this declaration almost a year ago and appear to have been lying in wait. That is precisely the trial by ambush the rules seek to prevent. *See Jama*, 280 F.R.D. 581, at 584 (saying "[a] key policy goal of requiring parties to keep their disclosures current is 'to avoid trial by ambush'" and finding the plaintiffs' late disclosure during the pendency of a motion for summary judgment "akin to trial by ambush, only on paper"). Moreover, as Plaintiff notes, even if Defendant was justified in withholding the declaration under some work product protection, Defendants should have logged it, giving Plaintiff an opportunity to challenge the alleged protection.

Defendants spend most of their time arguing the significance of the declaration and how it undercuts so many of Plaintiff's assertions and claims. (*See generally* Doc. No. 185 at 6–10.) That may be true, but it is precisely why the surprise and prejudice are so significant. The declaration goes to the heart of Plaintiff's damages arguments,[1] and it would be unfair to deprive Plaintiff of an opportunity to challenge it. Relatedly, the level of disruption at this juncture is high and Plaintiff's ability to cure is limited given the procedural posture of this case. Weighing these factors together, the Court finds Defendants' failure to disclose either the declaration or at a minimum a privilege log, is not substantially justified or harmless.[2]

Plaintiff asks the Court to strike the treater's declaration and permit the deposition of the treater at Defendant's expense. (Doc. No. 179 at 12.) Striking the declaration is appropriate, but

---

[1] The Court declines to detail the contents of the declaration because it has been filed under restriction.

[2] The Court does not reach the question of whether the declaration is work product because if it is work product, it should have been logged. If it is not work product, it should have been disclosed. Either way, Defendants' failure is not substantially justified or harmless.

ordering a deposition at Defendants' expense is not. The treater met with Plaintiff in or around the time of the core interactions and incidents in this case. (*See* Doc. No. 167-3 at (noting she last spoke to Plaintiff on April 22, 2022).) Clearly the treater would have information relevant to the claims and defenses in this case. Yet Plaintiff made the decision not to depose her. If Plaintiff seeks to depose his treater now, he may do so at his own expense.

## CONCLUSION

For the reasons set forth herein, the Court **GRANTS IN PART** Plaintiff's Motion for Sanctions and orders the following:

(1) The Gaasch Declaration is **stricken**.

(2) The declaration from Plaintiff's treater is **stricken**.

(3) Plaintiff shall be awarded 2/3 of the fees and costs associated with this Motion. Accordingly, Plaintiff is ordered to submit an affidavit for fees and costs associated with this Motion on or before **January 30, 2026**.

(4) Both pending motions for summary judgment (Doc. Nos. 164; 167) are **stricken** without prejudice to refiling after the parties consider the implications of this order. The Court sets the following deadlines:

   a. Deadline to complete the deposition of Plaintiff's treater and/or Ms. Skinner, if Plaintiff so chooses: **January 23, 2026**.

   b. Deadline for new summary judgment motions: **February 19, 2026**.

Dated this 6th day of January, 2026.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge

10