IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 23–cv–01921–NYW–MDB

DR. ANUJ PEDDADA,

    Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO d/b/a CENTURA HEALTH-PENROSE-ST. FRANCIS HEALTH SERVICES, and
COMMONSPIRIT HEALTH FOUNDATION d/b/a COMMONSPIRIT HEALTH,

    Defendants.

## ORDER

This matter is before the Court on Defendants' Motion for Sanctions. (["Motion"], Doc. No. 180.) Plaintiff filed a response, to which Defendants replied. (["Response"], Doc. No. 190; ["Reply"], Doc. No. 192.) After reviewing the Motion, briefing, and relevant law the Court **GRANTS** the Motion **in part**.

### BACKGROUND

This case arises in connection with Plaintiff's alleged termination in May 2022. (Doc. No. 190 at 1.) Plaintiff worked as a radiation oncologist and now seeks millions in damages against Defendants, alleging various violations of the Americans with Disabilities Act, the Rehabilitation Act, wrongful discharge, unjust enrichment, and civil conspiracy. (Doc. No. 104 at ¶¶ 159–226.) He filed this action on July 27, 2023. (Doc. No. 1.)

On June 24, 2024, the parties agreed to, and the Court entered, an ESI Order. (Doc. No. 69.) It calls for the preservation of all text messages from January 1, 2021, through the date of the ESI Order. (*Id.* at 2.)

In early 2025, the parties brought various disputes to this Court's attention. (Doc. No. 124.) Among them was Defendants' allegation that Plaintiff had not produced all responsive text messages with his wife (Chitra Peddada) or his brother (Abhinand Peddada). (*Id.* at 2.) Defendants acknowledged they received some responsive text messages via subpoenas served on Plaintiff's wife and brother, but none of those messages were retrieved from Plaintiff's phone and none were "from the most relevant time frame in this case—late 2021 to mid-2022." (*Id.* at 2-3.)[1]

At that time, Plaintiff did not object to the production of text messages, other than to say some messages had already been produced and "[i]t is unclear what else Defendants believe there is to produce, particularly when Plaintiff, his wife, and his brother all testified to the effect that text messages are not a common way in which they communicate." (*Id.* at 5.) Moreover, Plaintiff committed to producing responsive text messages. (*Id.* (stating that if Plaintiff "encounter[ed] any additional text messages that he has an obligation to produce under FRCP 26(e), he will do so.").) Accordingly, on February 4, 2025, the Court entered the following discovery order:

---

[1] For context, the most relevant timeframe appears to be April 2022-May 2022. On April 25, 2022, Plaintiff sent notice of his intent to take leave. (Doc. No. 75-12.) On April 27, 2022, Jeff Albert, Enterprise Medical Director of Radiation Oncology and Integrated Cancer Care at Centura, sent an email discussing Plaintiff's circumstances and suggesting that some disagreement and discord may be brewing. (Doc. No. 75-28.) Then, on May 9, 2022, Plaintiff was informed that his employment offer was rescinded or would not otherwise be renewed. (Doc. No. 75-18 at 2.)

2

> With respect to text communications, Plaintiff shall conduct a thorough review of his cellular device and produce all responsive text messages even if such message strings have been produced by third parties. Plaintiff is cautioned that any discrepancies or irregularities in the comparison of text strings could potentially form the basis for a follow up request. Thus, Plaintiff's review should be thorough and utilize the necessary technology to ensure a complete production of responsive texts.

(Doc. No. 131, ["First Discovery Order"].) That, however, was not the end of the dispute. Soon after the Court entered its First Discovery Order, it became clear certain text messages were completely missing from Plaintiff's phone. (*See generally* Doc. No. 145; *see also* Doc. No. 151 at 11:12-12:2 (reflecting that certain responsive text messages existed on Plaintiff's brother's phone but were missing from Plaintiff's phone).) Additionally, there appeared to be unnatural time gaps in text messages between Plaintiff and his wife. (*See generally* Doc. No. 145; *see also* Doc. No. 180-6 at 121:17-122:2; Doc. No. 167-51 at 106:1–109-14 (where Plaintiff's wife testified that she knew she and her husband were texting and e-mailing during the relevant timeframe, but apparently she could not retrieve those messages because her phone number was changed due to frequent "inappropriate" messages).)

On May 7, 2025, the Court entered a second discovery order on this issue:

> As for the wife's phone, Plaintiff's vendor shall consider the issues and prepare an affidavit that explains the April 2, 2021 to May 31, 2022 gap. If certain information is missing, the affidavit shall also: (1) provide options for restoring the missing information, or (2) confirm that a supplemental production has been made or is forthcoming.

(Doc. No. 147, ["Second Discovery Order"].)[2]

---

[2] The Court's Second Discovery Order only addressed the text messages between Plaintiff and his wife because at that time, the Court believed there were no remaining issues with respect to text messages between Plaintiff and his brother. This is because Defendants had previously received text messages from the brother's phone via subpoena. However, the parties' comments in subsequent filings and hearings gave the Court reason to revisit the issue and Plaintiff

3

On May 22, 2025, Plaintiff filed an expert declaration that did little more than explain the extraction process. (*See generally* Doc. No. 157-1.) Plaintiff's expert, Mr. Daniel D. Farr, said he was "unable to say for certain" why the text messages are not present. (Doc. No. 157-1 at 3.) Upon review of Mr. Farr's declaration, the Court issued a third discovery order on this issue:

> To date, Plaintiff has not provided a clear explanation for the time gap in text messages. The more the Court inquires, the more it appears certain text messages may have been deleted from Plaintiff's phone….it is notable that [the expert's] declaration mirrors Plaintiff's approach to this issue—which is to neither confirm nor deny the possibility of deletion. Accordingly, the Court orders Plaintiff to, on or before **June 13, 2025**, produce a supplemental declaration from his expert, Mr. Farr, that directly answers this question: *Is it possible that text messages between Plaintiff and his brother, and Plaintiff and his wife, during the relevant time gaps, were deleted?*
>
> If no, the declaration shall state what tools, methods, and/or processes Mr. Farr employed to draw the conclusion that text messages were *not* deleted. If yes, the declaration shall state: (1) what forensic or other tools are available to determine whether deletion occurred, (2) whether Mr. Farr is capable of employing such tools to determine whether any messages were deleted, and (3) whether he or another type of expert are capable of retrieving deleted messages. The Court's goal is to determine whether certain text messages were likely deleted from Plaintiff's phone, and whether any deleted messages are retrievable. The expert's supplemental declaration should provide any other information that might be helpful in making that determination.

(Doc. No. 158, ["Third Discovery Order"] (emphasis in original).)

---

subsequently confirmed that the production of text messages from Plaintiff's brother was also incomplete. (*See* Doc. No. 175 at 3 (stating, "[a]fter the hearing, undersigned counsel reviewed the case history and realized that his memory was partially incorrect…Plaintiff produced numerous pages of text messages with other individuals from Plaintiff's iPhone and iCloud but did not produce text messages with [his brother] from Plaintiff's iPhone and iCloud—Plaintiff only produced those text messages from Abhinand's iPhone….Upon realizing this oversight, on July 16, 2025, Plaintiff produced every text message that exists between Plaintiff and Abhinand on Plaintiff's iPhone and iCloud, regardless of responsiveness.").)

On June 13, 2025, Mr. Farr responded to the Third Discovery Order by confirming it was indeed possible that text messages between Plaintiff and his brother, and Plaintiff and his wife, during the relevant time gaps were deleted. (*See* Doc. No. 159-1 at 2.) Mr. Farr also explained that it is "highly unlikely that a Full Filesystem extraction of [Plaintiff's] iPhone would recover any additional deleted messages[,]" and complicating matters further, a Full Filesystem extraction "is only supported up to iOS version 18.3.2" and Plaintiff "has iOS version 18.5 installed." (*Id.*)

At present, no one can say with absolute certainty that certain text messages between Plaintiff and his wife and Plaintiff and his brother once existed but have since been deliberately deleted by Plaintiff. However, Defendant contends that viewing the evidence as a whole requires precisely that conclusion: Plaintiff must have deliberately deleted text messages in an effort to deprive Defendant of relevant evidence.

**LEGAL STANDARD**

When "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e), a court has two options.

First, a court may "upon finding prejudice to another party from loss of the information…order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Second, and "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation," a court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the

5

information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

"Unlike Rule 37(e)(1), Rule 37(e)(2) does not require an express or separate finding of prejudice because 'the finding of intent required by [Rule 37(e)(2)] can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position.'" *Cox v. Swift Transportation Co. of Arizona, LLC*, 2019 WL 3573668, at *1 (N.D. Okla. Aug. 6, 2019) (quoting Fed. R. Civ. P. 37(e) advisory committee's note (2015).) The moving party must carry its burden by a preponderance of the evidence. *See Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015); *SRS Acquiom Inc. v. PNC Fin. Services Group, Inc.*, 2023 WL 6461234, at *1 (D. Colo. Sept. 8, 2023), *report and recommendation adopted*, 2023 WL 8651425 (D. Colo. Nov. 7, 2023).

## ANALYSIS

As a threshold matter, the Court considers whether the subject text messages existed in the first place and are thus truly "missing." First, it is undisputed that at one time Plaintiff's phone did indeed contain text messages between him and his brother, and now those text messages are gone. (*See generally* Doc. No. 145; *see also* Doc. No. 151 at 11:12-12:2; Doc. No. 190 at 2-3 (acknowledging the gaps in Plaintiff's messages).) It is also beyond dispute that at least some of the messages between Plaintiff and his brother concern matters relevant to this case. (*See, e.g.,* Doc. No. 180-9 (text message between Plaintiff and his brother about Plaintiff's physician burn out).)

6

As to text messages between Plaintiff and his wife—Ms. Peddada confirmed that she and her husband were likely texting during the relevant time frame. (*See* Doc. No. 180-6 at 121:17-122:2; Doc. No. 167-51 at 106:1–109-14.)[3] Indeed, the Court would have to ignore common sense to believe that Plaintiff and his wife did not exchange a single text message on or around the time of his termination. This is especially so when the record shows Plaintiff and his wife were talking about the stress of work and related issues both before and after his termination. (*See, e.g.,* Doc. No. 180-5.) In short, it is more likely than not that the subject text messages indeed existed on Plaintiff's phone at some point, and are now missing.

Having concluded the messages once existed, the Court moves on to consider whether Plaintiff had a duty to preserve them. Plaintiff argues Defendant failed to issue a litigation hold or put Plaintiff on notice of the relevance of his own text messages. His argument falls flat. Plaintiff had a duty to preserve all relevant information when litigation was imminent. *Zbylski*, 154 F. Supp. 3d at 1162–63 ("Courts in this District have found that putative litigants had a duty to preserve documents once a party has notice that the evidence is relevant to litigation or when a party knew or should have known that the evidence may be relevant to future litigation."). Tensions were building as early as 2020. (*See generally* Doc. No. 180-5; *see also* Doc. No. 75-28 (email conveying the message that some believed Plaintiff was taking action to "stick it to [others]").) And by May 9, 2022, Plaintiff had been terminated. (Doc. No. 75-18.) As a sophisticated professional who appears to be aware of the importance of preserving documentation, Plaintiff should have known that text messages could be used as evidence and

---

[3] Plaintiff says this testimony is overstated, but even Plaintiff's own deposition transcript cites support the notion that Plaintiff and his wife were likely texting about relevant matters, including "burnout" and "Penrose Hospital." (Doc. No. 190 at 4 (citing Doc. No. 190-6 at 122:3-9).)

should be preserved. (*See e.g.,* Doc. No. 180-3 (reflecting that Plaintiff advises someone to write "an email and create a trail.").) Additionally, Plaintiff agreed to produce this information as part of the ESI Protocol and in representations to this Court. (*See, e.g.,* Doc. No. 124.) If Plaintiff believed he had no duty to preserve text messages from the relevant timeframe, he should have raised the argument sooner. Instead, Plaintiff claimed all relevant messages had been produced and committed to producing additional responsive messages, if any existed. (*See generally* Doc. No. 124 at 4-5.)[4]

Turning to the next inquiry, the Court considers whether the messages are missing because Plaintiff intended to deprive Defendant of relevant evidence in this litigation. Fed. R. Civ. P. 37(e)(2).[5] "Rule 37(e) does not define 'intent,' but in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Group LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (citation omitted). Unfortunately, "intent can rarely be shown directly," thus, courts "consider circumstantial evidence," for the purpose of assessing intent under Rule 37(e)(2). *Id.*; *see also Com. Resins Co., Inc. v. Carlson,* 2024 WL 3843598, at *11–12 (N.D. Okla. July 12, 2024) (stating intent may be inferred); *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018)

---

[4] It is also worth noting that here, Plaintiff's phone was set to auto-save text messages. (Doc. No. 159-1 at ¶ 5(a)(iii)).) This means Plaintiff did not have to affirmatively act but rather abstain from acting.

[5] Plaintiff's arguments suggest the Court must also make a separate and express finding of prejudice. Not so. As noted above, Rule 37(e)(2) does not require a separate finding of prejudice because it is—to some extent—implied. *See Cox*, 2019 WL 3573668, at *1; *see also Hallum v. Sheriff of Delaware Cnty.*, 2023 WL 6367656, at *4 (N.D. Okla. Sept. 29, 2023) ("If intent is found, there is no need to consider prejudice; the finding of intent supports both an inference that the lost information was unfavorable and that the opposing party was prejudiced.").

(stating "intent can be proved indirectly."); *N. Am. Sci. Assocs., LLC v. Conforti,* 2024 WL 4903753, at *16 (D. Minn. Nov. 27, 2024) (noting that "intent rarely is proved by direct evidence," and therefore "a court imposing spoliation sanctions has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witness in a particular case, and other factors." (internal citations and quotations omitted).) "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Jones,* 95 F.4th at 735 (quoting *Laub v. Horbaczewski*, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020)).

In *Jones*, the Ninth Circuit upheld the district court's dismissal sanction, finding circumstantial evidence that Plaintiff intentionally destroyed certain text messages. In coming to its conclusion, the court noted that Plaintiff could not explain why some messages to some employees were missing between 2017 and 2018. *Id.* Additionally, regarding a larger set of messages between 2019 and 2020, the district court pointed out that "'while much of the content of the deleted messages is unknowable,' a screenshot of a message sent by a witness to [Plaintiff] but missing from [Plaintiff's] phone in its original form, 'shows that Plaintiff deleted at least one message that had a direct bearing on her case.'" *Id.* at 735–36 (citation omitted).

Similarly, here, Plaintiff has been conspicuously silent about the missing messages. Moreover, his expert—who admits certain text messages might have been deleted—has not been able to explain why the messages are missing. The most obvious explanation for the missing text messages is that they were deleted. Indeed, Plaintiff acknowledges this is a reasonable conclusion. (*See* Doc. No. 190 at 10.) And though there may be no smoking gun forensics to confirm the deletion was intentional, there is ample circumstantial evidence.

9

First, the timing. As noted above, tensions were building in the spring of 2022. Jeff Albert wrote, "Alan believes this is an attempt by Anuj to 'stick it to him' while he still can, and sent a follow up email to me and Brian this afternoon indicating that he may not sign his contract if we still plan to have Anuj in the practice. He also thinks that Anuj may never come back." (Doc. No. 75-28.) Then 12 days later, on May 9, 2022, Defendant issued its rescission letter. (Doc. No. 75-18, at 2.) Conveniently, the missing messages cover part of April 2022, and all of May 2022.

Second, Plaintiff discussed these issues with his wife via text before and after his termination:

- "Very stressful at work." (Doc. No. 180-5, at 3.)
- "I will never have what I had [at Penrose] again" (*Id*. at 12)
- "I find Centura and many of their leadership just deplorable" (*Id.* at 13.)
- "She talked about employment discrimination due to race, age. Jeff has a pattern of discrimination. See a PCP monthly, regularly and therapist weekly." (*Id.* at 14.)
- "Sent my deposition comments to the lawyers . . . I commented on the planned time off coinciding with my medical leave." (*Id.* at 15.)

The Court would have to ignore the obvious to believe Plaintiff and his wife messaged each other about these issues before and after the termination timeframe, but not during.

Third, Plaintiff's expert confirmed that Plaintiff's phone was set to auto-save for text messages. (Doc. No. 159-1 at ¶ 5(a)(iii).) In other words, Plaintiff's own expert eliminated the possibility that the deletion occurred automatically, permitting the logical inference that the deletion occurred manually (or said another way, deliberately).

The procedural history is also relevant. If Plaintiff deleted the text messages before litigation began and before consulting an attorney because he personally (and innocently) believed they were irrelevant, he should have simply said so from the beginning. But he did not. Instead, Defendant and this Court were forced down a windy path through resistance and half-answers only to find out the messages were likely deleted—something Plaintiff could have been honest about from the beginning (or something Plaintiff's counsel could have uncovered early in the litigation). This also bears on the Court's conclusion that the deletion was not inadvertent or innocent.[6]

In short, based on the information in the record and the many conferences and hearings this Court has conducted, the Court concludes it is highly likely that: (1) Plaintiff exchanged text messages with his wife and brother that were relevant to the claims and defenses in this case, (2) some of those text messages were unfavorable to Plaintiff, and (3) Plaintiff decided to delete the messages so Defendant could not use them against Plaintiff in this litigation.

***Sanction***

Defendants argue that no sanction short of dismissal would be sufficient under the circumstances. (Doc. No. 180.) Plaintiff on the other hand contends dismissal is too severe and can only be ordered upon satisfaction of the *Ehrenhaus* factors. (Doc. No. 190.) Plaintiff's arguments are misplaced because Rule 37(e)(2) expressly authorizes severe sanctions where a court—as the Court has here—finds an intent to deprive. Nevertheless, the Court agrees with Plaintiff that a dismissal sanction would be too severe. Defendants were able to recover several

---

[6] Moreover, as Defendant points out, when Plaintiff was asked in deposition if he had text messages going back to 2021, Plaintiff responded by raising the idea of deletion—even though that was not part of the question. (*See* Doc. No. 180-7).

text messages—some of which appear helpful to Defendants. Moreover, courts typically prefer to resolve disputes on their merits. *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) ("Strong policies favor resolution of disputes on their merits." (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C.Cir.1970))). And while the intentional deletion of evidence is a serious transgression, the Court finds that exclusion of certain evidence and/or an adverse inference is likely a sufficient sanction.[7]

However, magistrate judges in this district restrain themselves when it is more appropriate for the presiding judge to fashion the sanction. *See generally Zbylski*, 154 F. Supp. 3d at 1172. In *Zbylski*, the Honorable Nina Y. Wang found spoliation, awarded Plaintiff fees and costs, but found further sanctions were

> more appropriately determined by Chief Judge Krieger as the presiding judge, after she resolves the pending motion for summary judgment and perhaps within the context of the admitted evidence and credibility of witnesses as offered at trial, with the assistance of findings reflected in this Order as she deems appropriate.

*Id*. Similarly, this Court finds it appropriate to abstain with respect to any sanction beyond fees and costs. The presiding judge can review this Court's Order and issue any additional sanctions or instructions she deems appropriate in light of the evidence, testimony, and context offered via dispositive motion and/or at trial.

## CONCLUSION

---

[7] Rule 37(e)(2) expressly authorizes an adverse inference where there was an intent to deprive. This aligns with case law requiring a finding of bad faith before issuing an adverse inference sanction, given that bad faith and intent to deprive are similar misdeeds. *See generally Equal Emp. Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 965-66 (10th Cir. 2017); *see also Stovall v. Brykan Legends*, *LLC*, 2019 WL 480559, at *3 (D. Kan. 2019).

The Court **GRANTS IN PART** Defendant's Motion for Sanctions. Defendants are ordered to submit an affidavit for fees and costs associated with this Motion, and the underlying text message discovery disputes, on or before **January 30, 2026**.

Dated this 6th day of January, 2026.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge