## PROFESSIONAL SERVICES AGREEMENT
### RADIATION ONCOLOGY, P.C.

THIS AGREEMENT is effective as of January 1, 2016, between Anuj V. Peddada, M.D. (subsequently called "Employee"), and Radiation Oncology, P.C., a Colorado professional corporation having its principal office at Colorado Springs, Colorado (subsequently called "Corporation").

WHEREAS, the Corporation desires to employ the Employee, and the Employee desires to accept such employment, on the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual promises and agreements herein set forth, the amounts to be paid hereunder, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    **Nature and Purpose of Agreement**:  The Colorado Business Corporation Act, as amended, permits doctors of medicine to incorporate and practice as Employees of such corporation. The Employee desires to practice medicine as a corporate Employee while keeping the best interest of his patients and the public a solemn obligation. The Board of Directors of the corporation has offered Employee employment for the compensation and any of the other benefits discussed below.  The Employee is willing to accept employment on such terms.

2.    **Professional Conduct**:  The Employee as a doctor of medicine will carry on the practice of medicine with a specialty in the field of oncology in accordance with the standards of professional conduct promulgated in the State of Colorado.

3.    **Employment**:  The Corporation hereby employs the Employee as a doctor of medicine.  The Employee hereby accepts employment from the Corporation upon the terms and conditions set forth in this Agreement. Except as otherwise provided herein, Employee agrees to devote his full time and best efforts in the performance of his duties as a physician for the Corporation in accordance with the highest ethical standards of the medical profession, and to perform such duties as are assigned to Employee from time to time by the Board of Directors of the Corporation.  Employee further agrees to provide medical services exclusively as an Employee of the Corporation.  It is agreed that the Corporation shall have the power to direct, control, and supervise the duties performed by the Employee, and the manner of performance of such duties.  For purposes of this Agreement, the term "full time" means that: (a) the Employee will maintain approximately an equal number of patients as the other physician-employee who is a shareholder of the Corporation (hereinafter "Owner Physician"); (b) the Employee will devote an equal amount of time to on-call and off-call duties averaged out over a one (1) year period as the other Owner Physician with the understanding that such on-call and off-call duties shall be rotated equally, to the extent possible, between all physician employees of the Corporation; and (c) the Employee will devote an equal amount of office hours pursuant to the current office schedule as the other Owner Physician.

4.    **Term**:  The term of this Agreement shall begin on January 1, 2016, and shall continue from such date until amended or terminated as provided in this Agreement.

5.    **Compensation**:  For all services rendered by the Employee under this Agreement, the Corporation shall pay the Employee the following compensation:

Radiation Oncology.Employment Agreement.Peddada 2016



EXHIBIT
5
Anuj V. Peddada, M.D.
exhibitsticker.com

(a)    **Base Salary:** A base salary of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) per year, which shall be paid in regular monthly installments or as determined by mutual agreement of the parties on an annual basis.

(b)    **RVU Compensation.** In addition to the base salary, Employee shall receive additional compensation based upon the portion of RVU's (Relative Value Units) of the Employee in relation to the total RVU's of all Owner Physicians. Unless the parties mutually agree otherwise, the RVU compensation will be determined under the following formula: Fifty percent (50%) of the net revenues of the Corporation for the applicable calculation period multiplied by the percentage of the Employee's RVU's for such period. Such additional RVU compensation shall be calculated and paid in regular installments as determined and mutually agreed by the parties on an annual basis. Absent mutual agreement, the RVU compensation will be calculated at the end of each calendar quarter and paid promptly after such calculation. For purposes hereof, the term "net revenues" shall mean: the gross revenues of the Corporation for the applicable calculation period less administrative expenses for such period as defined below, and less compensation paid during such period. However, all compensation distributions made within a fiscal year will be subject to adjustment based upon the corporation's year-end fiscal report for such fiscal year. If any excess amount was distributed during such fiscal year, as reflected by such financial report, the excess amount shall be taken into account in reducing future distributions. Any excess existing on termination of employment (after any set off as provided in the Amended and Restated Deferred Compensation Plan and Agreement of the Corporation) will be due and payable by the Employee to the Corporation within 180 days after such termination.

(c)    **Benefits:** In addition to the compensation set forth above, the Corporation shall provide Employee (so long as Employee qualifies for same) with the benefits described on attached Exhibit A hereto, which may be adjusted from time to time by the Board of Directors of the Corporation.

All compensation calculations (including the calculations of gross revenues, net revenues, administrative expenses and RVU's) shall be made at the end of each calculation period on a year-to-date cumulative basis by the Corporation's regular accountant utilizing the accounting principles historically used by the Corporation, and shall be binding upon the parties, subject to corrections by the accountant. However, compensation calculations shall be done at the end of the month immediately preceding the termination date in the event of the termination of this Agreement as provided herein. Additionally, the remaining net revenues of the Corporation shall be distributed prorata to the Owner Physicians as set forth in the Shareholder's Agreement.

A proforma example to illustrate the compensation allocation as between the Owner Physicians, and the procedure to be used to calculate the Employee's compensation is attached as Exhibit B to this Agreement and is made a part hereof. The proforma is an illustration of how the formula for calculating compensation will work; and, as such, may not reflect the actual compensation allocations made or to be made during the period shown on the proforma.

6.    **Employee's Duties.** The Employee is employed to practice medicine on behalf of the Corporation. The Employee will not engage in the practice of medicine except as an Employee of the Corporation unless otherwise authorized by the Board of Directors. Except as otherwise provided herein, Employee shall devote Employee's best efforts and entire professional time to the practice and affairs of the Corporation. Except as otherwise provided herein, all fees and income received by the Employee for professional services or other professional activities performed by the Employee shall belong to the Corporation. Other administrative expenses will include, but not be limited to, office expenses and rents, and administrative staff expenses, if any.

Radiation Oncology Employment Agreement Peddada 2016.

7.    **Facilities:**  The Corporation shall furnish facilities, services, and assistance suitable to the Employee's position for the performance of the Employee's duties.

8.    **Disclosure of Information:**  The Employee recognizes that he is practicing medicine as an Employee of the corporation, but it is agreed that nothing in this employment relationship shall modify the physician-patient privilege specified in Section 13-90-107 of the Colorado Revised Statutes.

9.    **Expenses:**  The Corporation and Employee acknowledge that the Employee may incur expenses on behalf of the Corporation incident to the conduct of the Employee's duties to the Corporation and the promotion of the business of the Corporation. Therefore, the Corporation agrees to pay to the Employee, or reimburse the Employee, for all reasonable and necessary practice development expenses as needed, and as agreed by the Board of Directors of the Corporation, which expenses shall be considered administrative expenses.  Other administrative expenses shall include, without limitation, billing, collections, accounting and legal fees, office expenses and administrative staff expenses, if any.  Any individual expenses and benefits which are solely incurred for the benefit of the Employee will be allocated to Employee as Direct Expenses.

10.    **Vacation and Professional Leave Time:**

a.    The Employee shall be entitled to the same amount of non-cumulative, paid vacation time during each corporate year of employment as the other Owner Physician of the Corporation, or such greater length of time as may be approved from time to time by the Board of Directors. The vacation days may be taken at the Employee's discretion, provided that he gives the Corporation and the other Owner Physicians at least two (2) weeks prior notice, and provided that there is adequate patient coverage available during the proposed vacation time, and the vacation time does not interfere with the Corporation's business as determined by the President. There shall be no reimbursement for, nor carryover of, vacation time which is not taken. Vacation time shall be prorated if employment is for less than the entire corporate fiscal year. This paid vacation time will include vacation and sick leave, without a decrease in base salary each year. In addition, the Employee shall be entitled to the same holidays as the other Owner Physician.

b.    CME Time. The Employee shall be entitled to same amount of non-cumulative, paid CME time during each corporate year in which he is employed as is taken by the other Owner Physician. Any CME time taken in excess of such time will be charged against the Employee's vacation time.

11.    **Disability:**  During any period in which the Employee is absent from work as a result of personal injury, sickness, incapacity or other disability, the Corporation will continue to pay to such Employee his full base salary and other compensation in the same amount and manner as such compensation was paid in the period immediately preceding such disability for a period of the first three (3) months of such disability during any twelve (12) month period. If the Employee is absent due to disability after three (3) months and the disability is determined to be (or reasonably expected to be based upon then available medical information) of six (6) months duration or more, the Board of Directors (exclusive of the Employee if the Employee is also a Director), in their discretion, may terminate the Employee's employment. After said three-month period of disability, if Employee continues to be absent from work due to disability, there shall be no further compensation paid to Employee.

Disability shall mean that, as a result of injury, sickness, incapacity or other disability, such Employee is wholly and continuously prevented from performing the duties of his regular occupation, as determined by a medical examination by an independent physician chosen by the Board of Directors, exclusive of the Employee if the Employee is also a Director. Upon returning to full-time employment

Radiation Oncology.Employment Agreement.Peddada 2016

after any disability, provided that the Employee has not been terminated, the Employee's compensation shall be:

a.      his full base salary and other compensation paid hereunder prior to disability; however, any compensation payments made to Employee by the Corporation during the Employee's disability shall be deemed an advance to the Employee and repaid from future profit distribution payments made to Employee starting with the first distributions made after the end of disability, provided that such compensation payments result in a deficit position for the Employee.

Any compensation payments made to the Employee during the period of disability shall be reduced by the amount of disability payments (if any) received by the Employee under any disability policies maintained by the Corporation on the Employee.

The three (3) month disability period shall commence on the first day of the month in which the disability occurs, unless the disability occurs after the 15th day of the month. If the disability occurs after the 15th day of the month, then the three (3) month disability period shall begin on the first day of the following month.

In the event of a dispute regarding the existence, extent or continuance of the disability, each party (i.e., Employee and Corporation) shall select a doctor, neither of whom shall be employed with the Corporation. If, after conferring but within ten (10) days, the two doctors cannot concur on a final decision, then they shall, within ten (10) days, select a third doctor whose determination of disability shall be binding on all of the parties hereto.

12.      **Death During Employment.** The Corporation, subject to the provision contained in Paragraph 11 for payment of compensation during disability, shall pay to the beneficiary named by the Employee in writing by the deceased Employee, or if none, to such Employee's surviving spouse, or if none, to the personal representative of his estate, the regular monthly compensation payments (reduced for disability payments, if any, under paragraph 12) for the month in which the death occurs to the extent not otherwise paid. Except for the payment obligations set forth in this paragraph 13, this Agreement shall terminate upon the Employee's death.

13.      **Termination For Reasons Other Than Disability Or Death.** This Agreement shall terminate for reasons other than disability or death as follows:

a.      Termination of Employment Without Cause.

i.      Except as otherwise provided below, this Agreement may be terminated by either party without cause and at any time, upon one hundred eighty (180) days prior written notice by either party to the other; however, in lieu of giving notice, the Corporation may pay Employee an amount equivalent to Employee's then compensation allocation amount which would be payable for the 180-day period at which point this Agreement shall be terminated.

ii.      Upon the voluntary or involuntary liquidation or dissolution of the Corporation.

b.      Termination for Cause. The Corporation has the right at any time to immediately terminate this Agreement "for cause" upon written notice to the Employee that the Board of Directors, by majority vote of all directors, other than the Employee, has terminated this Agreement for cause, upon the happening of any of the following events:

Radiation Oncology.Employment Agreement.Peddada 2016

i.    If for any reason Employee shall be ineligible and/or disqualified to practice medicine in the State of Colorado or at any hospital where the Corporation conducts its medical practice, or if Employee's license to practice medicine or his hospital privileges are restricted, suspended or revoked;

ii.    If the Employee shall be expelled, suspended or otherwise disciplined by the final action of any duly constituted authority as the result of professional misconduct, provided none of the other Owner Physicians have participated or acquiesced in the professional misconduct which provided the basis for such action;

iii.    If the Employee shall resign from any professional organization under threat of disciplinary action that would prevent the Employee from practicing medicine in Colorado;

iv.    If the Employee shall be convicted of a felony or a criminal offense involving moral turpitude, or if the Employee shall enter a plea of nolo contendre to a felony or a criminal offense involving moral turpitude;

v.    If the Employee materially breaches any of his agreements or obligations under this Agreement and fails to cure same within 10 days after written notice is given to Employee of such failure by the Corporation;

vi.    If the Employee fails to maintain full-time status with the Corporation;

vii.    The Employee's commission of an act of Unprofessional Conduct as defined under the Colorado Medical Practice Act, as hereinafter amended;

viii.    If the Employee is charged with any violation of, or sanctioned, fined, suspended or excluded from any federal or state healthcare reimbursement program, including but not limited to, Medicare and Medicaid;

ix.    The Employee's continued neglect or willful misconduct, disloyalty, or failure to devote his best efforts to the Employee's duties and obligations under this Agreement if such neglect, failures or actions are not corrected by Employee within 10 days after written notice of same is given to Employee by the Corporation;

x.    The cancellation of the Employee's professional liability insurance coverage, and the inability to reinstate such coverage or obtain reasonable substitute coverage concurrent with such cancellation

c.    Employee's Cooperation.  Following any notice of termination, the Employee shall fully cooperate with the Corporation in all matters relating to the completion of his pending work on behalf of the Corporation and the orderly transfer of any such pending work to professional employees as may be designated by the Board of Directors. Furthermore, the parties hereto agree to give full cooperation to each other in the day-to-day activities and operations of the practice, and until the termination goes into effect, the Employee agrees to devote his full-time efforts on behalf of the Corporation.

Radiation Oncology Employment Agreement Peddada 2016

14.    **Rights Upon Termination:** Upon termination for any reason other than disability or death, the Corporation shall pay to the terminated Employee his regular compensation through the day of termination according to the Corporation's then existing compensation formula.

Upon termination of the Employee's employment (and after payment of compensation to Employee and the other Owner-Physician through the date of such termination), the Corporation agrees to make an election under Section 1377(a) of the Internal Revenue Code of 1986 (the "Code") to determine the share of the Corporation's net income allocable to Employee by use of the "close the books" method provided under Code Section 1377(a)(2). The books shall be closed and net income allocated among the Corporation's shareholders as of the date of termination. The Employee shareholder's share of such net income shall be payable to Employee shareholder within 60 days after the date of termination. The allocation shall be determined by the Corporation's CPA in accordance with the accounting methods regularly employed by the Corporation. Employee shareholder agrees to make any necessary elections under such Code section to have Code Section 1377(a)(1) apply.

15.    **Records:** Upon the termination of this Agreement, Employee shall not be entitled to keep or preserve patient records of Corporation as to any person for whom services were performed, unless such person shall specifically request in writing a different disposition of his records; and in no event shall Employee be entitled to the records or files of any person for whom Employee did not render the particular services on behalf of the Corporation.

All financial, regulatory and tax records of the Corporation for the year of termination and for prior years shall be maintained and kept by the Corporation and/or the Corporation's CPA for not less than seven (7) years from the date filed with the Internal Revenue Service and/or prepared, and Employee shareholder and his authorized representative shall have the right to review and copy such records upon reasonable written request.

16.    **Retirement Plan:** Employee shall be entitled to participate in the retirement plans established by the Corporation, or retirement plans equal to those established for the employees of the Corporation, as determined by the Board of Directors.

17.    **Notices:** Any notices required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the residence of the Employee or to the principal office of the Corporation, as the case may be.

18.    **Termination of Benefits:** Upon termination of this Agreement by either party for whatever reason, all benefits payable to the Employee hereunder shall cease and the Corporation shall have no further obligation to provide said benefits, except as required by law.

19.    **Nondeductible Compensation:** In the event a deduction shall be disallowed for federal and/or state income tax purposes of all or any part of the Direct Expenses of the Employee paid hereunder and the Corporation shall be required to defend such disallowance and/or to pay any additional taxes, penalties or interest ("Deficiency") on account of such disallowance, the Employee shall repay to the Corporation an amount equal to the Deficiency amount and costs to defend same within six (6) months after the date on which the Corporation pays the Deficiency or such costs; provided, however, that in lieu of payment by the Employee to the Corporation, the Board of Directors of the Corporation may, in The discretion of the Board, withhold amounts from the Employee's future compensation payments until the amount owed to the Corporation has been fully recovered. In any event, the Employee agrees to be

responsible for and to indemnify the Corporation from any Deficiency incurred by the Corporation and for all costs incurred in defending any Deficiency, and any audit or other proceeding related to such Deficiency, including any CPA or attorney's fees incidental thereto.

20.    **Malpractice Coverage:**

a:       The Corporation shall pay for and provide malpractice insurance coverage for the Employee during the term of his employment, with limits subject to the Corporation's reasonable determination but in no event less than $1 million/$3 million. Proof of such medical malpractice insurance shall be provided upon reasonable request. However, this Agreement may be terminated in the event that the Corporation fails to provide proof of such insurance within five (5) days after written request, provided such failure is not due to the Employee's fault. The Employee agrees to provide the necessary information needed to acquire such insurance.

b.       Upon termination of this Agreement, for whatever reason, including death, disability, and termination for cause or not for cause, the Employee or his representative shall purchase and pay for professional liability "tail" insurance coverage relating to claims made following such termination for the Employee's acts or omissions occurring during his term of employment. Such "tail" insurance shall be in an amount of coverage equal to the minimum amount of $1 million/$3 million. The Employee, individually and for his representative, hereby agrees to continue such tail coverage at his sole expense for a period of three (3) years from the effective date of his termination. Furthermore, the Employee, individually and for his representative, hereby agrees to provide proof of such insurance coverage satisfactory to the Corporation of the purchase of such insurance within fifteen (15) days of the termination of this Agreement and within fifteen (15) days of each succeeding policy anniversary arising during such three (3) year period. The Corporation shall also be named as an additional insured on such policy and the terms of the policy shall provide for thirty (30) days prior notice to the Corporation in the event of a failure to pay the premium or in the event of a change in coverage. The Employee, for himself and his heirs, devisees and personal representative, also agrees to provide evidence of such insurance coverage satisfactory to the Corporation from time to time upon the written request of the Corporation during the said three (3) year period. This covenant shall be construed as an agreement independent of any other provision of this Agreement, and the existence of any claim or cause of action by either party against the other, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of this covenant, and the Employee hereby waives any defenses to this covenant to the extent permitted by law. Furthermore, this covenant shall survive the termination of this Agreement for whatever reason, and may be independently enforced.

c.       Upon the failure of the Employee or his representative to provide evidence satisfactory to the Corporation (the "Damaged Party") of the initial purchase of or continuing insurance coverage under such "tail" insurance, the Damaged Party, in addition to pursuing any other remedies available at law or at equity, may apply any amounts owed by it to the Employee toward the purchase by the Damaged Party of such "tail" insurance on behalf of the Employee, and the Damaged Party may retain any amounts owed by it to the Employee, without interest, to provide, to the extent of the amounts owed to and retained by the Damaged Party, for the payment of premiums to renew the "tail" insurance during the aforesaid three (3) year period.

21.   **Patients:**  The Employee acknowledges that all patients seen by him during the term of his employment are the Corporation's patients. The Employee specifically agrees that he will not give any person an understanding or assurance, express or implied, that he will be personally responsible for, or be employed in the care of, such person, and acknowledges that the Corporation has the exclusive authority to assign patients to its Employees. Upon termination of his employment hereunder for any reason, the Employee may not, without the prior written consent of the Corporation contact these patients. Upon termination of Employee's employment, the parties will give Employee's patients a mutually agreeable notice advising them of Employee's departure from the practice and how he may be contacted. If the parties cannot agree on the notice, the parties agree to give a mutual notice to the Employee's patients as may be required to be given under the professional rules of ethics. This provision shall survive termination of this Agreement for whatever reason.

22.   **Applicable Law/Venue:**  Each party to this Agreement agrees that this Agreement shall be construed and governed under the laws of the State of Colorado, and that subject to the arbitration provision set forth in Section 24, the Courts in El Paso County, Colorado, shall have exclusive venue and jurisdiction for any legal action arising hereunder. This provision shall survive the termination of this Agreement for whatever reason.

23.   **Arbitration:**  If any controversy or claim arising out of this Agreement cannot be settled by the parties to this Agreement, the controversy or claim will be settled by any individual or entity selected by the unanimous written agreement of the parties to this Agreement, or if such parties cannot agree, by arbitration in Colorado Springs, Colorado, through the services provided by the Judicial Arbiter Group, in accordance with the then applicable provisions of the Commercial Arbitration Rules of the American Arbitration Association and pursuant to the Uniform Arbitration Act in effect under Colorado law. Any arbitration award will be binding on all parties to this Agreement. Judgment on such arbitration award maybe entered in any court having jurisdiction. The prevailing party in any arbitration proceeding will be entitled to recover their attorney's fees and costs from the non-prevailing party. This arbitration provision is independent of any other provision of this Agreement and shall survive the expiration, termination or breach of any other term of this Agreement.

24.   **Waiver Of Breach:**  Waiver by the Corporation of a breach of any provision of this Agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee.

25.   **Assignment:**  The rights and obligations of the Corporation under this Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of the Corporation. The Employee may not assign or delegate his rights or obligations hereunder.

26.   **Entire Agreement:**  This Agreement together with the Amendment and Restated Deferred Compensation Plan and Agreement of Radiation Oncology, P.C. and Amended and Restated Shareholders' Agreement of even date herewith, contains the entire agreement of the parties and this Agreement may not be changed orally but only by written agreement signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. If any provision of this Agreement is deemed unenforceable or invalid for any reason, the remainder shall remain in effect. This Agreement and each of its provisions are to be construed fairly and reasonably, and not strictly for or against either party hereto.

27.    **Termination of Prior Employment Agreement.**  The Employment Agreement between the parties dated July 17, 2009 is hereby terminated effective as of midnight on December 31, 2015, and is superseded hereby.

        IN WITNESS WHEREOF, Radiation Oncology, P.C., has caused this Agreement to be signed by its Vice President, and attested by its Secretary, all as duly authorized by its Board of Directors, and Employee has signed his name to this Agreement effective as of the date given above.

                                        "Corporation"
                                        RADIATION ONCOLOGY, P.C.

ATTEST:

                                        By:_____
                                            Alan T. Monroe, M.D., Its Vice President

_____
Alan T. Monroe, M.D., Secretary

(SEAL)                                  "Employee"

                                        _____
                                        Anuj V. Peddada, M.D.

Radiation Oncology.Employment Agreement.Peddada 2016

# EXHIBIT A
## TO
## PROFESSIONAL SERVICES AGREEMENT
## RADIATION ONCOLOGY, P.C.

Employee Benefits:

1.    Health and other medical and dental insurance.

2.    Retirement plan contributions.

3.    Professional liability insurance.

4.    CME expenses.

5.    Life and disability insurance.

6.    Licensing fees.

7.    Auto and travel expenses (use of personal vehicle).

8.    Books, meetings and seminar expenses.

9.    Dues and subscriptions.

10.   Meals and entertainment expenses.

11.   Specific office expenses.

12.   Telephone/cell phone expenses.

13.   Any other employee benefits as may be approved by the Corporation.

EXHIBIT B
Radiation Oncology, P.C.
Schedule of Practice Income Allocation
FOR ILLUSTRATION - REGULAR

|  | | Dr. Peddada | Dr. Monroe | Practice |
|---|---|---|---|---|
| Revenues: | | | | $ 1,850,000 |
| Administrative Expenses - ordinary: | | | | 130,000 |
| Income to be Allocated | | | | 1,720,000 |
| Allocation of Annual Base: ($250,000 per physician) | $ | 250,000 | $ 250,000 | (500,000) |
| Available for Allocation | | | | 1,220,000 |
| Equal Allocation (50% of Available) | | 305,000 | 305,000 | (610,000) |
| | | | | 610,000 |
| Allocation by RVUs | | 316,346 | 293,654 | (610,000) |
| Allocation Total | | 671,346 | 848,654 $ | 0 |
| Professional Compensation Paid | | (563,346) | (541,654) | |
| Net Income | | 308,000 | 307,000 | |
| Distributions Paid | | (305,000) | (305,000) | |
| | | 3,000 | 2,000 | |
| Carryover from Previous Year | | 0 | 0 | |
| Due to (from) Officer (Carryover to Next Year) | $ | 3,000 | $ 2,000 | |

|  | 100.00% | 51.86% | 48.14% |
|---|---|---|---|
| RVUs | 45,700.00 | 23,700.00 | 22,000.00 |